UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GRAYMOR PROPERTIES LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00754-JMS-TAB |
| | ) | |
| BATTERY PROPERTIES, INC. and | ) | |
| CMW INTERNATIONAL, LLC, | ) | |
| | ) | |
| *Defendants*. | ) | |

# ORDER

Hazardous waste has contaminated certain real property located at 70 South Gray Street in Indianapolis, Indiana ("the Site"). This case concerns concurrent federal and state proceedings relating to who is liable for costs associated with cleaning up the Site. The Site's current owner, Plaintiff Graymor Properties LLC ("Graymor"), initiated this lawsuit ("the Federal Action") against Defendants Battery Properties, Inc. ("Battery Properties") and CMW International, LLC ("CMW") (collectively, "the Defendants"). Battery Properties is the legal successor to certain liabilities at the Site; CMW is a prior owner of the Site. Although Battery Properties and CMW are co-defendants in the Federal Action, they are adverse parties in concurrent state proceedings initiated several years ago in Marion Superior Court. *Battery Properties, Inc. v. CMW Int'l, LLC*, Case No. 49D13-1706-PL-022673 (Marion Super. Ct. 2017) ("the State Action"). In the State Action, Battery Properties initiated a lawsuit against CMW to determine who is liable for costs associated with cleaning up hazardous waste that has contaminated the Site. The Indiana Department of Environmental Management ("IDEM") has intervened in the State Action to protect the interests of Indiana. Alleging that the State Action and the Federal Action (collectively, "the Concurrent Actions") are parallel, Battery Properties has filed a Motion to Stay Under *Colorado*

1

*River*.  [Filing No. 25.]  CMW joined in the Motion.  [Filing No. 37.]  The Motion is now ripe for the Court's review.

# I.
## BACKGROUND

The following facts are set forth in record of the Federal Action and the public records of the State Action, of which the Court takes judicial notice. *J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021) (the Court can take "judicial notice of matters of public record, including court filings and documents from the ongoing state court proceedings incorporated into the federal complaint.") (citation omitted).  Prior proceedings in this case span several years, so the Court recounts the background most relevant to deciding the Motion to Stay.

### A.  Industrial Operations Contaminate the Site

For several decades in the 1900s, the Site was owned and operated by an entity called P.R. Mallory, which manufactured "batteries, electrical power devices, and solid-state components." [Filing No. 1 at 2-7.]  The Site became contaminated with hazardous waste produced in the industrial operation. [Filing No. 1 at 2-7.]  In the 1970s and 80s, some of P.R. Mallory's liabilities were transferred to Battery Properties, and the Site's ownership and operation were transferred to CMW. [Filing No. 1 at 13; Filing No. 26-1 at 4.]  CMW continued industrial operations at the Site until approximately 2013. [Filing No. 26-1 at 4.]

### B.  The State Action

In 2014, Battery Properties discovered environmental contamination at the Site. [Filing No. 26-1 at 4.]  In 2015, Battery Properties demanded contribution for costs associated with clean-up. [Filing No. 26-1 at 4-5.]  That same year, IDEM issued to CMW a Special Notice of Liability Letter and demanded an investigation and potential remediation. [Filing No. 26-1 at 4.]  Meanwhile, CMW was allegedly engaging in efforts to settle with its insurance carriers "for less

than [their insurance policies] were worth." [Filing No. 26-1 at 7-9.] Lacking sufficient insurance proceeds—and facing remediation costs worth potentially tens of millions of dollars—CMW risked falling short of covering its potential liability. [Filing No. 26-1 at 7-8.]

To avoid being left "with no recourse," in 2017, Battery Properties initiated the State Action against CMW and its member LLC in Marion Superior Court. [Filing No. 26-1 at 3, 8-9.] In the State Action, Battery Properties alleged that CMW caused or contributed to the "release of hazardous substances . . . into the subsurface soil and/or groundwater at and emanating from the Site," for which it is liable under Indiana's Environmental Legal Action Statute, Ind. Code § 13-30-9-1, *et seq*. ("ELA") [Filing No. 26-1 at 10.] Alleging that CMW is largely "defunct," Battery Properties requested a restraining order and a receiver to prevent CMW from transferring its insurance-related assets. [Filing No. 26-1 at 1, 11, 14.] Later, IDEM intervened, joining Battery Properties in requesting a restraining order and a receiver. *See* IDEM's Motion to Intervene at 18-20 (Sept. 20, 2017), in the State Action. CMW entered into a confidential Escrow Agreement with Battery Properties and agreed to stipulated permanent injunctive relief in favor of Battery Properties and IDEM; to memorialize those agreements, the parties requested an order, which the court in the State Action granted. Stipulated Permanent Injunction Order at 1-2 (May 1, 2018), in the State Action. The Stipulated Permanent Injunction Order permanently enjoins CMW from dissipating any settlement proceeds from certain insurers and from engaging in settlement with certain other insurers, subject to conditions outlined in the Stipulated Permanent Injunction Order and the Escrow Agreement. *Id.* at 3-6. Eventually, CMW counterclaimed against Battery Properties, alleging a claim under ELA. [Filing No. 26-2 at 15.]

    **C.**    **The Federal Action**

In January 2023, CMW signed a purchase agreement to sell the Site to Graymor. [Filing No. 49-1 at 1-11.] A few months later, in May 2023, Graymor initiated this litigation against both

CMW and Battery Properties.  [Filing No. 1.]  Graymor alleges multiple claims under multiple theories, including violations of ELA; violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"); negligence; and negligence per se under ELA, CERCLA, and the Resource Conservation and Recovery Act ("RCRA") [Filing No. 1 at 16-20.]

Alleging that Graymor is potentially liable for cleanup costs, Battery Properties and CMW have each counterclaimed under CERCLA.  [Filing No. 27 at 35-36 (Battery Properties); Filing No. 49 at 38-39 (CMW).]  CMW adds a further counterclaim for breach of contract, alleging that Graymor's lawsuit is itself a violation of the terms of the Site's purchase agreement.  [Filing No. 49 at 39-41.]

Because the Federal Action and the State Action are concurrent proceedings, Battery Properties and CMW have moved to stay this Federal Action under the abstention doctrine of *Colorado River*.  [Filing No. 25; Filing No. 37.]; *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  The Motion is ripe for the Court's consideration.

## II.
## LEGAL STANDARD

"[T]he mere fact that an action is pending in state court ordinarily is no bar to parallel federal proceedings," "[b]ecause federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"  *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989) (quoting *Colorado River*, 424 U.S. at 817)).  Resting on principles of "wise judicial administration," *Colorado River*, 424 U.S. at 818, the Court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction"; rather, the Court's task is to "ascertain whether there exist 'exceptional' circumstances . . . to justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis omitted).  The requirement of such "exceptional circumstances" makes *Colorado River*

4

a "remarkably difficult standard" to meet. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir. 2005). "[A]ny doubt regarding the parallel nature of the [two suits] should be resolved in favor of exercising jurisdiction," and against abstaining under *Colorado River*. *AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 520 (7th Cir. 2001) (citation omitted). The decision to deny a stay under *Colorado River* is not immediately appealable, and the decision to determine abstention is committed to the district court's discretion. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277-78 (1988); *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011).

## III.
### DISCUSSION

In support of their Motion to Stay, the Defendants argue that the Concurrent Actions are parallel. [Filing No. 26 at 6.] Specifically, the Defendants argue that "[t]he questions in both cases include who is responsible for the environmental damage to the Site, what costs to clean-up the Site are reasonable, and who should pay how much of those costs." [Filing No. 26 at 7.] It asserts that answering those questions will require examining "the same evidence," including "the history of the Site; the use of chemicals at or near the Site; the present condition of the Site; the current presence of the chemicals at the Site and in what quantities; the danger posed by the chemicals at the Site; the regulatory history of the Site (including the involvement of IDEM in overseeing clean-up); the best methods for clean-up of the Site; and the proper amount to be paid for costs and attorneys' fees for the clean-up of the Site." [Filing No. 26 at 7 (numerals omitted).] All these, the Defendants argue, "are standard factual issues in both ELA and CERCLA cases." [Filing No. 26 at 8.] Further, although Graymor is not "yet" a party to the State Action, the Defendants argue that the difference in named parties does not alter the central issue, which is "determining liability for the clean-up costs at the Site." [Filing No. 26 at 8.] The Defendants note that the State Action will

5

"apportion liability as to all potential parties who caused the damage," including Graymor, even if Graymor is not a party to the State Action.  [Filing No. 26 at 9 (emphasis omitted).]

In response, Graymor argues that the Concurrent Actions are not parallel because it could not have raised its CERCLA claims in the State Action because CERCLA claims fall within this Court's exclusive federal jurisdiction, so it could not have been a party to the State Action.  [Filing No. 39 at 8.]  "[W]here Congress has determined that exclusive federal jurisdiction is desirable," Graymor argues, "*Colorado River* does not apply."  [Filing No. 39 at 5.]  Graymor argues "[f]or that reason alone, the two cases are not parallel."  [Filing No. 39 at 9.]  Regarding the parties, Graymor argues that the State Action "solely relates to the respective liabilities" of Battery Properties and CMW, "which has absolutely nothing to do with Graymor." [Filing No. 39 at 9.]  In contrast, Graymor argues, the Federal Action involves Battery Properties' and CMW's "liability to Graymor."  [Filing No. 39 at 9 (emphasis omitted).]

In reply, the Defendants argue that the Concurrent Actions are parallel because both address the same questions, the same evidence, and the same facts.  [Filing No. 48 at 7.]  They contend that common questions include "what contamination exists at the Site and who caused it," and that "[a]ny number of findings in the [State Action] could bind" the Defendants and "end this dispute" because "there is a reasonable chance that the [the court in the State Action] could enter a judgment that functionally resolves the CERCLA case through issue preclusion."  [Filing No. 48 at 8-9.]  Regarding exclusive federal jurisdiction, the Defendants argue that CERCLA does not deprive a state court of jurisdiction to decide a state case arising under only state law claims.  [Filing No. 48 at 2-4.]  Consequently, the Defendants argue, Graymor can and should be required "to assert its CERCLA theories as a defense in the state case" because it "does not violate the grant of federal court jurisdiction" under CERCLA.  [Filing No. 48 at 4.]

6

As the Seventh Circuit has explained, "*Colorado River* provides a two-part test for determining whether a federal district court should abstain from adjudicating a claim when there is a related state court proceeding." *Admin. Comm. v. Gauf*, 188 F.3d 767, 772 (7th Cir. 1999). First, "the two suits must be parallel," which means "they must involve substantially the same parties litigating substantially the same issues." *Id.* (citation omitted).  Second, if the related cases are parallel, then the court must determine whether the *Colorado River* factors justify abstention because of "exceptional circumstances." *Id.*  The Court will begin with the parties' arguments regarding whether the Concurrent Actions are parallel.

### A. Whether the Concurrent Actions are Parallel

In determining whether two proceedings are parallel, the question is whether there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 499 (7th Cir. 2011) (citation omitted).  That question is answered by determining whether "substantially the same parties are contemporaneously litigating substantially the same issues." *Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006) (citation omitted).

The Court turns first to the issues regarding exclusive federal jurisdiction, how that applies to the CERCLA claims, and how that informs the Court's analysis of whether the Concurrent Actions involve substantially the same issues.

### 1. *Substantially the Same Issues*

#### a. Exclusive Federal Jurisdiction

In *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 211-12 (7th Cir. 1988), the Seventh Circuit decided "whether *Colorado River* deference is ever appropriate where the federal action involves claims over which the federal courts have exclusive jurisdiction." In that case, as in this one, there were concurrent proceedings. *Id.*  In the federal forum, one of the federal claims was

7

brought pursuant to section 10(b) of the Securities Exchange Act of 1934. *Id.* That claim could have been brought only in federal court because the claim fell within the federal court's exclusive jurisdiction. *Id.* Arguing that the concurrent proceedings counseled abstention under *Colorado River*, the defendants in the federal proceeding moved for a stay, which the district court granted. *Id.* at 212.

The Seventh Circuit reversed the district court's grant of the stay, reasoning that exclusive federal jurisdiction reflects Congress's "considered judgment" that "federal courts should be the primary forum for handling such claims"; that federal courts could "severely hamper" such jurisdiction if they "exercised discretionary power to await the outcome of related state court proceedings"; and that "exclusive federal jurisdiction [would] cultivate uniformity and expertise,…sometimes to ensure the use of more liberal federal procedural protections." *Id.* at 213 (quoting *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 63 (2d Cir. 1986)). Finding that "[a]ll three purposes are thwarted by deference to concurrent state proceedings," the Seventh Circuit provided a "clear rule": "where a plaintiff's nonfrivolous claim invokes the exclusive jurisdiction of federal courts, the *Colorado River* stay is not appropriate." *Id.* at 213-15.

b. CERCLA and Exclusive Federal Jurisdiction

Applying *Medema* to the Motion to Stay, the Court first addresses whether the CERCLA claims are within its exclusive federal jurisdiction. On this point, the Supreme Court has clearly answered yes: "Section 113(b) of [CERCLA] provides that 'the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter,' so state courts lack jurisdiction over such actions." *Atl. Richfield Co. v. Christian*, 590 U.S. ----, 140 S. Ct. 1335, 1349 (2020) (quoting 42 U.S.C. § 9613(b)).

The Defendants argue that *Atlantic Richfield* permits state courts to exercise jurisdiction "to decide a complaint asserting purely state-law claims." [Filing No. 48 at 3.] While that is

8

*Atlantic Richfield's* holding, it is not *Atlantic Richfield's* relevant application. That case concerned whether state-law claims could be brought in state court notwithstanding CERCLA; this case concerns whether CERCLA claims can be brought in state court notwithstanding exclusive federal jurisdiction. It cannot. *Atlantic Richfield*, 140 S. Ct. at 1350 (CERCLA "deprives state courts of jurisdiction over claims brought under the Act."). Tellingly, Battery Properties and CMW have themselves raised CERCLA counterclaims in only the Federal Action. [Filing No. 27 at 36 (Battery Properties counterclaim); Filing No. 49 at 38-39 (CMW counterclaim).]

The Defendants argue further that Graymor should be required to enter the State Action and "assert its CERCLA theories as a defense." [Filing No. 48 at 4.] But that argument was directly rejected in *Medema*, 854 F.2d at 212, 214 (holding *Colorado River* abstention as inapplicable even though opposing party's federal violations could "be raised defensively in state court" since "Congress [had] established exclusive federal jurisdiction over affirmative [federal claims]"). Assuming CERCLA claims could be raised as defenses in state court, the Defendants' cited authority falls short of permitting, much less requiring, Graymor to do so. *See AAR International*, 250 F.3d at 522 (reversing *Colorado River* abstention where "no authority . . . suggest[ed] that a federal action is parallel to a state . . . action for *Colorado River* abstention purposes when the claim upon which the federal action is based is pleadable as a compulsory counterclaim in the other action."). The Court concludes it has exclusive federal jurisdiction over the CERCLA claims.[1]

---

[1] The parties' briefs appear to refer primarily to Graymor's CERCLA claim, [*see, e.g.*, Filing No. 26 at 4-5; Filing No. 39 at 4], but Graymor is not the only party asserting a CERCLA claim. Battery Properties asserts a CERCLA counterclaim against Graymor, claiming Graymor is a "potentially responsible party." [Filing No. 27 at 36.] And CMW asserts a CERCLA counterclaim against Graymor making the same allegation – that Graymor is a "potentially responsible party." [Filing No. 49 at 38-39.] The Court's analysis thus addresses the parties' arguments regarding abstention as to all the claims in the Federal Action.

c. *Medema*'s Application to Frivolous Claims

Although the Court has exclusive federal jurisdiction over a CERCLA claim, "a stay is within the court's discretion," "where the exclusively federal claim is frivolous." *Medema*, 854 F.2d at 215. In evaluating frivolousness, in *Medema* the Seventh Circuit considered that the federal complaint "echoe[d] the allegations" made in the state case, referencing allegations to an individual not even a party in the federal case. *Id.* at 212. Yet the Seventh Circuit did not *sua sponte* find the federal case frivolous. *Id.* at 215. Instead, the Seventh Circuit contrasted *Medema* with another case where a stay was "permissible" due to "unique facts," including that the plaintiff "had admitted in oral argument before the Supreme Court that its" claim was frivolous. *Id.* (citing *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F.2d 1228, 1232 (7th Cir. 1979) ("*Calvert IV*")). The Seventh Circuit remanded to the district court to permit the parties to argue whether the claim was frivolous." *Id.* Here, the CERCLA claims fall short of the unique facts noted in *Medema*. Each party asserts a CERCLA claim; no party admits its CERCLA claim is frivolous. The Court finds that the CERCLA claims are not frivolous.

Although *Medema* analyzed whether the exclusive federal claim was "frivolous," the Court additionally addresses the parties' analogous arguments regarding whether the CERCLA claims are "vexatious or contrived."

The Defendants argue that Graymor's CERCLA claim is "vexatious or contrived" because "Graymor purchased the Site after the filing of the" State Action. [Filing No. 26 at 13.] The Defendants argue that "Graymor had every reason to know of the issues with the property it purchased," either through its own due diligence or through the seller's disclosure. [Filing No. 26 at 14.] They argue that "[b]y filing a separate lawsuit instead of intervening in the [State Action], Graymor creates a situation of duplicate litigation that threatens inconsistent results." [Filing No. 26 at 14.]

10

Graymor responds that it could not have brought its CERCLA claim in the State Action. [Filing No. 39 at 13.]  It argues further that the Defendants "offer[] no authority supporting [their] somewhat astounding argument that a plaintiff who is not a party to an unrelated state case is required to seek permission . . . to intervene in that state case to bring its own, new claims, rather than file those claims in a separate legal action."  [Filing No. 39 at 13.]

The Defendants reply that Graymor's claim is vexatious because it seeks "two bites at the apple":  If Graymor "likes the result of the [State Action,]" the Defendants argue that Graymor "can invoke that judgment through issue preclusion"; if Graymor "does not like the result, it will seek a do-over through this federal case."  [Filing No. 48 at 13.]

Under *Colorado River*, a claim is "vexatious or contrived" when "the claims and parties in the federal suit could have been included in the original state court proceeding." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1023 (7th Cir. 2014).  Here, no party could have brought its CERCLA claim in the State Action. *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, 934 F.3d 553, 558 (7th Cir. 2019) (plaintiff "did not bring a CERCLA claim in its state-court suit—nor could it.  Federal courts have exclusive jurisdiction over CERCLA claims.").  The Court finds that the CERCLA claims are not vexatious or contrived.  Because the CERCLA claims are exclusive to the federal court, and there is no applicable exception, the Court must exercise jurisdiction over the CERCLA claims.

This leaves the Court with substantial doubt that the State Action will dispose of all the claims in the Federal Action.  For example, in a case including exclusive federal claims, for purposes of *Colorado River* abstention, abstaining in reliance on potential issue preclusion "clearly should not be encouraged." *Medema*, 854 F.2d at 214 n.2 (7th Cir. 1988) (rejecting defendants' arguments that "the substance of federal exclusivity may be retained . . . by allowing the facts to

be found by the state court, with the federal courts merely applying federal law to those facts") (emphasis omitted); *see also* Huon, 657 F.3d at 649 (vacating and remanding *Colorado River* abstention where "the real motivation behind the district court's decision was its guess that *res judicata* would eventually preclude all of the [plaintiff's] claims in federal court. But this lay in the future; the court's anticipation of the [state] outcome . . . was not enough to justify abstention."). The Court notes that there are potentially significant differences between CERCLA and the state claims, particularly regarding liability. *See* Valbruna, 934 F.3d at 566 ("CERCLA gives district courts discretion not only to decide how ultimately to divvy cleanup costs, but it also grants the court the authority to decide which equitable factors will inform its decision in a given case.") (internal quotations and citations omitted).

The Court finds that the parties in the Concurrent Actions are not litigating substantially the same issues.

    2.  *Substantially the Same Parties*

Even if the parties were litigating substantially the same issues in the Concurrent Actions, those parties are not substantially the same. Parties are "substantially the same" when they have "nearly identical" interests. Loughran v. Wells Fargo Bank, N.A., 2 F.4th 640, 648 (7th Cir. 2021) (citation omitted).

Here, the parties have potentially opposing interests regarding who is liable for the costs of cleanup. In the Federal Action, the only plaintiff is Graymor. In the State Action, the only plaintiff is Battery Properties. In the Concurrent Actions, the plaintiffs both seek recovery of costs from CMW, an allegedly defunct company possessing a fixed pool of assets. And the plaintiffs seek to apportion damages at the Site among themselves. Thus, for recovery and liability, the plaintiffs' interests are potentially zero-sum. Those interests fall short of nearly identical. *See* Gauf, 188 F.3d at 768-69, 772 (reversing *Colorado River* abstention where healthcare plan suing

12

in federal court to compel reimbursement from defendant's personal injury proceeds was not substantially the same party as that same defendant who sued to collect injury proceeds from other parties in state court). IDEM's interests are no substitute. *See* IDEM's Motion to Intervene at 1-2 (Sept. 20, 2017), *in* the State Action (moving to intervene because IDEM's "interests are not adequately represented by the current parties' interests"); *see also VIM Recycling,* 644 F.3d at 499 (reversing *Colorado River* abstention in environmental case where citizen plaintiffs were not substantially the same as IDEM).

Battery Properties cites cases involving concurrent proceedings where the parties' interests were more closely aligned. [*E.g.*, Filing No. 26 at 8 (citing *Loughran,* 2 F.4th at 648 (holding parties were substantially the same where defendant banks litigated a single issue of who possessed a debtor's mortgage note); *Clark v. Lacy*, 376 F.3d 682, 686 (holding parties were substantially the same where plaintiffs were shareholders whose real party in interest was the company)).] But unlike parallel actions in which the parties congruently have something to gain, in these Concurrent Actions the parties adversarially have something to lose. Because the parties' interests across the Concurrent Actions fall short of nearly identical, the Concurrent Actions are not litigated by substantially the same parties.

In sum, these considerations lead the Court to conclude that the Concurrent Actions do not involve substantially the same issues litigated by substantially the same parties. Accordingly, the Court finds that the Concurrent Actions are not parallel.

### B. Whether the *Colorado River* Factors Show Exceptional Circumstances

Because the Court has determined the Concurrent Actions are not parallel, the Court "need not balance the *Colorado River* factors" to determine whether exceptional circumstances justify abstention. *TruServ Corp.*, 419 F.3d at 593.[2]

### C. Further Proceedings

Although the Court will permit the development of all of the claims in the Federal Action, the Court remains mindful of the many years of litigation that have taken place in the State Action. [*See* Filing No. 26-4 (Marion County Case Docket).] Respect and comity for the State Court, paramount considerations in our federal system, counsel toward creating a newly tailored Case Management Plan. Such a Case Management Plan must be wary to avoid opportunistic attempts "to receive a favorable federal . . . ruling that can be used affirmatively or offensively to shape— or perhaps change—the direction and course of the state court proceedings." *J.B.*, 997 F.3d at 723. Likewise, the Case Management Plan must attempt to avoid the "unseemly" potential for a "rush to judgment" due to "contradictory orders on discovery matters." *LaDuke*, 879 F.2d at 1560 & n.6 (citing *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 694 n.2 (7th Cir. 1985)).

Therefore, the parties are directed to confer to attempt to agree upon a Case Management Plan that coordinates between the State Action, the Federal Action, and any other related proceeding. *See generally* Fed. R. Civ. P. 16; S.D. Ind. Local Rule 16-1. The parties shall submit the proposed amended Case Management Plan by **October 11, 2023**. If they cannot agree on an amended CMP they shall file competing versions by the same date. In the event of competing

---

[2] For the same reason, the Court need not reach the question of whether and under what circumstance a federal court can engage in "partial abstention" to stay only some claims and while exercising jurisdiction over the remaining claims within its exclusive federal jurisdiction.

versions, the Court **REQUESTS** that the Magistrate Judge confer with the parties as soon as practicable to determine an appropriate Amended Case Management Plan.

To further ensure that the State Action is respected and that the Federal Action does not unduly interfere, the Defendants are directed to report the status of the State Action and any other related proceeding by filing quarterly reports starting **January 1, 2024**. *See, e.g.*, *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1290 (7th Cir. 1988) (directing the district court to require the parties to report "the progress of the state litigation . . . in the event that it should become advisable to lift the stay").

### IV.
### CONCLUSION

Based on the foregoing, the Court:

- **DENIES** the Motion to Stay under *Colorado River*, [25];

- **ORDERS** the parties to confer and attempt to agree upon a Case Management Plan that coordinates between the State Action, the Federal Action, and any other related proceeding. The parties shall submit the proposed amended Case Management Plan by **October 11, 2023**. If they cannot agree on an amended CMP they shall file competing versions by the same date. In the event of competing versions, the Court **REQUESTS** that the Magistrate Judge confer with the parties as soon as practicable to determine an appropriate Amended Case Management Plan; and

- **ORDERS** the Defendants to file quarterly reports regarding the status of the State Action and any other related proceeding starting **January 1, 2024**.

Date: 9/29/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record:**

Matthew Thomas Albaugh
Taft Stettinius & Hollister LLP
malbaugh@taftlaw.com

Joseph C. Chapelle
BARNES & THORNBURG, LLP (Indianapolis)
joe.chapelle@btlaw.com

Mark Jason Crandley
BARNES & THORNBURG, LLP (Indianapolis)
mcrandley@btlaw.com

John Paul Fischer, Jr.
BARNES & THORNBURG, LLP (Indianapolis)
john.fischer@btlaw.com

Edward S. Griggs
BARNES & THORNBURG, LLP (Indianapolis)
sean.griggs@btlaw.com

David Hatchett
HATCHETT & HAUCK LLP
david.hatchett@h2lawyers.com

Michael Jonathan Reeder
HATCHETT & HAUCK LLP
mike.reeder@h2lawyers.com

William Philip Sweet
Taft Stettinius & Hollister LLP
wsweet@taftlaw.com